**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Erin Michelle Leach, | No. CV-19-05593-PHX-DLR |
| Plaintiff, | **AMENDED ORDER[1]** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Erin Leach's Applications for Disability Insurance benefits and Supplemental Security Income benefits by the Social Security Administration (SSA) under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 10, "Pl. Br."), Defendant SSA Commissioner's Answering Brief (Doc. 12, "Def. Br."), and Plaintiff's Reply (Doc. 13, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 9, "R."), and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 16–48) as upheld by the Appeals Council (R. at 1–6).

**I.     BACKGROUND**

Plaintiff filed her Application for Disability Insurance benefits on August 7, 2015, alleging disability beginning March 4, 2014. (*Id*. at 19.) She later filed an Application for

---

[1] The Court's Order dated October 30, 2020 (Doc. 14) is amended to correct the date that Plaintiff alleged disability began pursuant to the parties' Stipulation to Correct Order Pursuant to Rule 60, FRCP (Doc. 18).

Supplemental Security Income benefits on February 25, 2016, alleging the same disability onset-date. (*Id*.) Her claims were denied initially on December 29, 2015, and were denied on reconsideration on September 2, 2016. (*Id*.) On July 19, 2018, Plaintiff appeared and testified at a hearing before the ALJ. (*Id*.) On November 5, 2018, the ALJ denied her claim, and on October 25, 2019, the Appeals Council denied Plaintiff's Request for Review. (*Id*. at 1–6, 16–48.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease; hip osteoarthritis; headaches; seizure disorder; nonfamilial hypogammaglobulinemia; bilateral carpal tunnel syndrome; asthma; fibromyalgia; major depressive disorder; anxiety disorder; and mild cognitive disorder. (*Id*. at 22.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (*Id*. at 36.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id*. at 23.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, never climbing ladders, ropes, or scaffolds, frequent bilateral hand[l]ing, fingering, and feeling, occasional exposure to non-weather related extreme cold, wetness, loud noise, excessive vibration, pulmonary irritants such as fumes, dusts, odors and gases, and no exposure to dangerous machinery or unprotected heights, and no requirement to drive as part of the job. She is limited to work with minimal in-person interaction with the public, and limited to tasks that can be learned by demonstration within 30 days.

(*Id*. at 26–27.) Accordingly, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id*. at 36.)

1    . . . .

2    . . . .

3    **II.    LEGAL STANDARDS**

4          In determining whether to reverse an ALJ's decision, the district court reviews only

5    those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

6    517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

7    determination only if it is not supported by substantial evidence or is based on legal error.

8    *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence

9    that a reasonable person might accept as adequate to support a conclusion considering the

10   record as a whole. *Id.* To determine whether substantial evidence supports a decision, the

11   Court must consider the record as a whole and may not affirm simply by isolating a

12   "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is

13   susceptible to more than one rational interpretation, one of which supports the ALJ's

14   decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954

15   (9th Cir. 2002) (citations omitted).

16          To determine whether a claimant is disabled for purposes of the Act, the ALJ

17   follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of

18   proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*

19   *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether

20   the claimant is presently engaging in substantial gainful activity. 20 C.F.R.

21   § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe"

22   medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At

23   step three, the ALJ considers whether the claimant's impairment or combination of

24   impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

25   of 20 C.F.R. Part 404.  20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically

26   found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines

27   whether the claimant is still capable of performing past relevant work. 20 C.F.R.

28   § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she

determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.   ANALYSIS

Plaintiff raises several issues for the Court's consideration. First, Plaintiff argues that the ALJ improperly evaluated several medical opinions of record, including those offered by Plaintiff's treating physicians. (Pl. Br. at 6–11.) Second, Plaintiff argues that the ALJ improperly evaluated Plaintiff's testimony regarding her symptoms. (*Id.* at 11–14.) Third, Plaintiff argues that the ALJ improperly rejected lay witness testimony from Plaintiff's mother. (*Id.* at 14–15.) Finally, Plaintiff argues that the ALJ improperly calculated Plaintiff's RFC and failed to account for all of Plaintiff's limitations in posing hypothetical questions to the vocational expert that testified at Plaintiff's hearing. (*Id.* at 2, 15–16.)

For the reasons that follow, the Court agrees with several of Plaintiff's arguments and finds that the ALJ's errors warrant remanding Plaintiff's case for computation and award of benefits. Specifically, the Court agrees that the ALJ erroneously rejected Plaintiff's symptom testimony, the lay witness testimony of Plaintiff's mother, and the treating physician opinions of Dr. Shruti Parasher and Dr. Matthew Doust. Since these errors are dispositive, Plaintiff's remaining arguments are superfluous.

### A.   The ALJ erred by rejecting Plaintiff's and her mother's testimony.

At her hearing, Plaintiff testified that she has several limitations that prevent her from sustaining work on a regular basis. (R. at 63.) Specifically, Plaintiff identified the following as the most significant barriers to her sustaining employment: mental capacity; frequent time off to attend medical appointments; inability to sit for long periods of time; need to frequently lay down; need to regularly elevate her feet; anxiety; and finally, frequent migraines. (*Id.*) Plaintiff's mother echoed her allegations and observed that "[s]he is in so much pain and very weak, [that] she only does what's necessary. (*Id.* at 343–358, 411-417.)

. . . .

The ALJ rejected Plaintiff's and her mother's testimony for several reasons. Regarding Plaintiff's testimony, the ALJ found that it was inconsistent with (1) the objective medical evidence; (2) Plaintiff's part-time work during the relevant period; (3) Plaintiff's activities of daily living (ADLs); and (4) Plaintiff's improvement in her symptoms with treatment. (*Id.* at 27–31.) Next, the ALJ rejected the lay witness testimony of Plaintiff's mother because "she is not medically trained and her opinion is based upon casual observation, rather than objective medical examination and testing." (*Id.* at 35.) The Court finds that the ALJ erred by rejecting Plaintiff's and her mother's testimony.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

The ALJ erred by rejecting Plaintiff's testimony because of its purported inconsistency with her ADLs and her part-time work during the relevant period. Substantial evidence does not support the ALJ's conclusion that Plaintiff's ADLs or her work were inconsistent with her allegations. The ALJ cited the following ADLs as inconsistent with Plaintiff's allegations: (1) living with her son; (2) light household chores; (3) light cooking;

(4) managing her hygiene; (5) remembering medications; (6) managing her finances; (7) watching TV; (8) running frequent errands; (9) driving independently; (10) going to car shows and concerts; (11) listening to music; and (12) spending time with her dogs. (R. at 31.) The ALJ's entire analysis regarding Plaintiff's ADLs consisted of listing the above activities and concluding that they are inconsistent with Plaintiff's alleged limitations. This was insufficient. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (observing that ALJs must specify "*which* daily activities conflicted with *which* part of Claimant's testimony") (emphasis in original). None of the listed activities are inherently inconsistent with Plaintiff's allegations, nor does the ALJ specify how any given activity was inconsistent with Plaintiff's testimony. And the records the ALJ cites do not provide greater detail regarding her ADLs; in one record the ALJ cites, Plaintiff states that "it's a struggle every[]day because of the lack of energy and pain." (R. at 31, 1312, 3447.) Moreover, the ALJ did not indicate whether any of her ADLs are consistent with sustained employment or make any specific findings regarding those activities. *See Burch*, 400 F.3d at 681. Absent specificity as to what Plaintiff's ADLs functionally involved or how those ADLs contradict her testimony, the ALJ's reasoning is insufficient.

The ALJ similarly erred by finding that Plaintiff's part-time work during the relevant period contradicts her testimony. The ALJ did not find that Plaintiff had substantial gainful employment during the relevant period but still found that her ability to spend "a couple hours a week handling scheduling for her employees . . . [and] sitting in an office for a few days a week for another position," was inconsistent with her allegations. (R. at 21, 31.) Again, although Plaintiff's work was a proper consideration, the ALJ does not specify how her work-activities contradict her allegations. Significantly, Plaintiff testified that as her impairments progressively increased, she tapered her part-time work down to 15 to 20 hours per month. (*Id*. at 75–76.) Further, she testified that because she was an owner at her workplace she could leave, rest, prop her feet, and use a heating pad as needed. (*Id*. at 75–77.) This testimony was the basis for the ALJ's rejection of Plaintiff's allegations based on her part-time work, but absent greater specificity from the ALJ, it is a

mystery as to how it contradicts Plaintiff's allegations of disabling symptoms. Accordingly, the ALJ erred.

Next, the ALJ erred by rejecting Plaintiff's allegations because of her improvement with treatment. *See, e.g.*, *Garrison*, 759 F.3d at 1017 (reiterating that ALJs may not rely on isolated instances of partial or temporary improvement as support for concluding that a claimant is capable of sustaining work). Here, the voluminous medical record indicates that Plaintiff received only partial and temporary relief from various treatment modalities. (R. at 539, 736, 1380, 1383, 2343, 3201, 3650–52, 3655, 4305, 4307.) Further, her testimony is consistent with the medical record. For example, in May 2018, Plaintiff's treating physician noted that Plaintiff's severe spinal pain persisted despite aggressive treatment. (R. at 3651, 3655.) Regarding her migraine headaches, another treating physician observed that chemodenervation, *i.e.*, Botox injections, was required because her migraines *had not* responded to oral medication. (*Id*. at 3201.) Finally, despite repeated injections and surgery, Plaintiff reported only partial and temporary relief of her carpal tunnel syndrome in her right hand. (*Id*. at 1348, 1380, 2343.) And in May 2018, she reported worsening pain in her left hand despite treatment. (*Id*. 4305, 4307.) Accordingly, substantial evidence does not support the ALJ's finding that Plaintiff's improvement undermines her allegations since the record indicates that her improvement was only partial and temporary.

The ALJ's final reason for rejecting Plaintiff's testimony—that it was purportedly inconsistent with the objective medical evidence—also fails because, even if true, it cannot form the sole basis for rejecting a claimant's testimony. *See Burch*, 400 F.3d at 682. Since the Court rejects the ALJ's other bases for rejecting Plaintiff's testimony, the ALJ's reliance on the objective medical evidence stands alone, and therefore, is inadequate.

As for the testimony of Plaintiff's mother, Defendant concedes the ALJ erred by rejecting it because Plaintiff's mother is a casual observer rather than a medical professional. (Def. Br. at 23.) Nevertheless, Defendant argues that "the ALJ's specific, well-supported bases for discounting Plaintiff's allegations were equally applicable to her

1   mother's allegations." (*Id.*) As discussed above, the Court disagrees that the ALJ's bases
2   were specific or well-supported. Therefore, Defendant's argument fails, and the Court finds
3   that the ALJ erred by rejecting the testimony of Plaintiff's mother.

4       Because the ALJ failed to provide sufficient justification supported by substantial
5   evidence for rejecting Plaintiff's and her mother's testimony, the ALJ erred.

6       **B.    The ALJ erred by rejecting the treating physician opinions of Drs.**
7       **Shruti Parasher and Matthew Doust.**

8       Plaintiff's treating physicians opined that Plaintiff experiences persistent symptoms
9   from her impairments that significantly limit her functional abilities. After reviewing
10  Plaintiff's medical records, Dr. Doust concluded that "she has significant findings that
11  would prevent her from working in any occupation at this time." (R. at 3783–84.) In another
12  evaluation, Dr. Doust evaluated Plaintiff's functional capacity in detail and found that
13  Plaintiff's impairments cause "[c]ontinued severe pain despite aggressive treatment." (*Id.*
14  at 3650–51.) Dr. Parasher evaluated Plaintiff's functional limitations due to her migraines
15  and found that she would have approximately two headaches of four to eight hours per
16  week. (*Id.* at 1402–05.) Accordingly, Dr. Parasher found Plaintiff would be absent from
17  work about twice a month due to her impairments. (*Id.* at 1405.)

18      The ALJ rejected both doctors' opinions. (*Id.* at 33.) Regarding Dr. Parasher's
19  opinion, the ALJ found that it was inconsistent with the medical record and overly reliant
20  on Plaintiff's self-reports. (*Id.*) Specifically, the ALJ found that Dr. Parasher's opinion was
21  inconsistent with evidence in the record that Plaintiff's headaches responded to medication
22  and Botox injections. (*Id.*) As for Dr. Doust's opinion, the ALJ found it was not supported
23  by the medical record, his own findings, and was inadequately explained. (*Id.*) Further, the
24  ALJ rejected his additional statement that Plaintiff is unable to sustain work because it is
25  not a medical opinion. (*Id.*)

26      While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy
27  among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.
28  2008). Those who have treated a claimant are treating physicians, those who examined but

did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion "is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Substantial evidence does not support the ALJ's rejection of Dr. Parasher's opinion. Initially, the record undermines the ALJ's finding that Plaintiff's migraines are responsive to treatments besides Botox injections; rather, the record indicates the opposite. (R. at 33, 736, 1383, 1575, 3201, 3211.) And although Botox injections provided a 40% improvement in Plaintiff's migraines, the evidence indicates that her migraines still occur in an amount consistent with Dr. Parasher's opinion. (*Id*. at 3211, 1402.) Before Botox injections were administered, Plaintiff reported four headaches per week in March 2016 and 15 headaches per month in July 2017. (*Id*. at 1383, 3213.) Thus, even a 50% reduction in Plaintiff's migraines due to Botox injections—which is greater than the medical records indicate occurred—still leaves Plaintiff with around two migraines per week. So, the evidence supports Plaintiff experiencing two migraines per week even with some improvement. Since this is exactly what Dr. Parasher opined, his opinion is not inconsistent with the evidence. Further, the ALJ erred by rejecting Dr. Parasher's opinion because it was purportedly largely based on Plaintiff's self-reports. *See Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (internal quotations omitted). Here, as discussed above, Plaintiff's symptom testimony was not properly discounted as incredible, so it was error for the ALJ to conclude that Dr. Parasher's opinion was based on unreliable self-reports.

Although the ALJ properly dismissed Dr. Doust's opinion on the ultimate issue of disability, the ALJ erred in rejecting his opinion regarding Plaintiff's functional limitations. The ALJ's assertion that Dr. Doust's opinion is unexplained is misplaced. Opinions in check-box form can be entitled to substantial weight when adequately supported by experience with the patient and medical records that have notes in support of the opinion. *Garrison,* 759 F.3d at 1013–14. Such is the case here: the medical records substantiate and explain Dr. Doust's opinion. (R. at 3650–784.) Further, the ALJ's conclusion that Dr. Doust's opinion is undermined by the medical record is unsupported by substantial evidence. Significantly, although the ALJ identifies some findings that possibly indicate Plaintiff is not as functionally limited as Dr. Doust opines, these peripheral findings do not undermine Dr. Doust's opinion. (*Id.* at 33.) For example, the May 2018 examination the ALJ cites as revealing only mild limitations notes Plaintiff has "pain throughout spine . . . reduced [range of motion] due to pain . . . [and] FABER Test: positive." (*Id.* at 3654–55.) Further, Dr. Doust noted during the same examination that Plaintiff "continues to describe severe and progressive, cervical thoracic and lumbar spine pain, worse in the cervical spine today. The pain has been ongoing now for over 10 years. The pain increases with any kind of prolonged activity such as lifting, weightbearing activity, and activities of daily living such as cooking, cleaning and recreational type activities." (*Id.* at 3655.) Instead of undermining Dr. Doust's opinion, the record substantiates his opinion that Plaintiff has continued severe pain despite aggressive treatment. (*Id.* 3650–51, 3661, 3668, 3673, 3678, 3683, 3688.)

In sum, the ALJ erred by rejecting the opinions of Dr. Doust and Dr. Parasher. The ALJ's conclusion that Dr. Doust's opinion was unexplained and unsupported by the evidence was itself unsupported by the evidence. Similarly, the conclusion that Dr. Parasher's opinion was contradicted by Plaintiff's improvement was unsupported by the evidence. Botox injections and other treatments only partially improved Plaintiff's migraines, and Dr. Parasher's opinion accounted for that improvement. Moreover,

Plaintiff's self-reports did not justify the ALJ discounting Dr. Parasher's opinion since the ALJ did not justifiably reject Plaintiff's testimony.

**C.**    **The appropriate remedy is to remand Plaintiff's case for computation and award of benefits.**

The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *See Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

Plaintiff argues that the appropriate remedy is to remand her case for computation and award of benefits because all the elements of the credit-as-true rule are met. (Pl. Br. at 16.) The Court agrees that remanding Plaintiff's case for benefits is the appropriate remedy. Initially, as detailed above, the ALJ incorrectly rejected treating physician opinions and the testimony of Plaintiff and her mother. Next, the record has been extensively developed such that further proceedings would serve no useful purpose. Finally, if the improperly rejected evidence were credited as true, then the ALJ would be required to find Plaintiff is disabled. At Plaintiff's hearing, the vocational expert testified that an individual with the limitations opined to by Dr. Doust would be unable to perform any full-time work. (R. at 91–92.) Nor does the record as a whole create serious doubt that Plaintiff is, in fact, disabled. Instead, the voluminous medical record and the evidence contained therein substantiate Plaintiff's allegations that she is severely functionally limited due to her impairments.

. . . .

1      **IT IS THEREFORE ORDERED** reversing the November 5, 2018 decision of the

2  Administrative Law Judge (R. at 16–48.), as upheld by the Appeals Council (R. at 1–6).

3      **IT IS FURTHER ORDERED** remanding this case to the Social Security

4  Administration for computation of benefits.

5      **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment

6  consistent with this Order and close this case.

7      Dated this 4th day of November, 2020.

8

9

10

11                                                    _____

12                                                    Douglas L. Rayes
                                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28